(91 App. Div. 240.)

REICH v. DYER et al.

(Supreme Court, Appellate Division, First Department. February 11, 1904.)

1. DEED AS MORTGAGE—SUBSEQUENT SALE TO MORTGAGEE.

Plaintiff executed to L., defendants' testate, an instrument on its face a deed with a consideration of $40,000, but which was in fact a mortgage, with an option to L. to buy within a year for the consideration expressed in the deed. Thereafter L. wrote plaintiff that she elected to exercise the option, and plaintiff wrote her that she thereby released the land, with the understanding that L. was to pay her the balance of the purchase price. Held, that this was not sufficient to constitute a sale, so as to entitle plaintiff to recover the consideration.

Laughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by Elizabeth Reich against Edith La Bau Dyer and another, executrices of Alicia V. La Bau. From a judgment on a verdict for plaintiff, and from an order denying a motion for new trial, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, INGRAHAM, and LAUGHLIN, JJ.

John M. Bowers, for appellants.
Charles Strauss, for respondent.

INGRAHAM, J. The plaintiff in this action seeks to recover the consideration named in a deed of real property, which, upon its face, conveyed a certain farm upon Long Island to the defendants' testatrix. The complaint alleged that "on or about the 28th day of March, 1895, at the city and county of New York, this plaintiff sold and conveyed to the defendants' testatrix, Alicia V. La Bau, in her lifetime, at her request, all that certain tract, piece, or parcel of land" which is particularly described; that "the defendants' testatrix first entered into possession of said premises on or about the 28th day of March, 1895, and exercised all acts of ownership over same up to the time of her death"; that "the said defendants' testatrix agreed to pay said plaintiff therefor the sum of forty thousand ($40,000) dollars, as follows: Three hundred and sixty-one ($361) dollars, which was due and owing by said plaintiff to defendants' testatrix on the said 28th day of March, 1895, to be credited as of said last-mentioned date as part consideration of said purchase money, and the balance of thirty-nine thousand six hundred and thirty-nine ($39,639) dollars to be paid by said defendants' testatrix, Alicia V. La Bau, on or before the 1st day of March, 1897." The allegation thus relied on is a sale of the premises in question on the 28th day of March, 1895, the consideration therefor to be paid on or before the 1st of March, 1897.

The answer, in effect, denied the sale of the property, and alleged that there was no contract entered into by the testatrix relating to a sale or conveyance of this property; that the contract alleged was void under the statute of frauds; and that the claim or demand sought to be recovered was barred by the statute of limitations.

The plaintiff testified that she was the owner of a farm at Brentwood, Long Island, and that she continued in the possession of this farm until the month of March, 1895; that she made a conveyance of the property on the 31st day of October, 1894; that this conveyance was in pursuance of negotiations in which her husband, Mrs. La Bau, and herself took part; that in pursuance of these negotiations she executed a deed, which she gave to Mrs. La Bau; that the plaintiff remained in possession of the farm until February, 1895. This deed was dated and acknowledged on the 31st of October, 1894, and recorded on the 10th of November, 1894. She also testified that on the 28th day of March, 1895, she delivered possession of the farm to one Moyer; and that on October 30, 1894, she received a loan of $3,133 from Mrs. La Bau. The plaintiff's husband testified that the deed of the property was delivered to Mrs. La Bau in the presence

of the witness on the last of October, 1894; that Mrs. La Bau said
'that she reserved a right to purchase the property within one year
for the amount stated in this deed, and meanwhile it stood as security
for the loan of $3,133 made by Mrs. La Bau to the plaintiff; that
prior to this time there had been a discussion about the price at
which the plaintiff would sell the property, and that the plaintiff had
stated that her lowest price was $40,000, and it was the result of this
conversation that $40,000 was inserted in the deed; that subsequently,
in February, 1895, Mrs. La Bau advertised for a tenant of the prem-
ises; that the answers to this advertisement were submitted to the
plaintiff, and that then a Mr. Bell, who had acted as attorney for the
plaintiff, was introduced to Mrs. La Bau by the plaintiff or her hus-
band to go out to the farm, and show it to applicants; that Mr. Bell
was asked by both Mrs. La Bau and the plaintiff to show the place
and to draw up the lease of the premises; that the property was
leased to Mr. Moyer. Mr. Bell drew up a lease to Moyer, delivered
it to Mrs. La Bau, and subsequently the witness received a letter in-
closing the lease prepared by Mr. Bell, as follows: "Please sign the
accompanying lease as agent for me and oblige [Mrs.] A. V. La Bau."
Thereupon the witness signed this lease, "Lorenz Reich, Agt.," and
it was executed by the tenant, who went into possession of the prem-
ises. This lease is in form between "Lorenz Reich, of the city, coun-
ty and state of New York, lessor, as agent of Alicia V. La Bau, owner
of the lands and buildings thereon hereinafter described," and pur-
ports to lease the premises in question for the term of five years,
commencing on the 1st day of April, 1895, at the yearly rental of
$1,200, and with a covenant that the lessee should have the option of
purchasing this property for the price of $45,000. The witness then
testified that he remembered the plaintiff receiving a letter delivered
by Mr. Bell in the handwriting of Mrs. La Bau either the evening
after the lease with Moyer was signed or the next day—that is, either
the 29th or 30th of March, 1895; that he was present when this let-
ter was received by the plaintiff; that the plaintiff read it aloud to the
witness, and afterwards handed the witness the letter; and that he
was familiar with Mrs. La Bau's handwriting, and the letter was in
her handwriting. He further testified: "To the best of my recollec-
tion, I think the letter read this way: 'As I yesterday—your farm at
Brentwood, Long Island, stated in the deed of October last I pur-
chased for $40,000, of which three hundred and some dollars—I don't
remember exactly, but I think sixty some dollars—has been cred-
ited as part payment and the balance I am to pay on or before March,
1897, and as I yesterday leased the property and the chattels to a
tenant who has a right of purchase, for my protection, I would like
to receive a letter from you stating that you release the property;
also send me a duplicate receipted bill for all the chattels.' This is
about the substance of the letter." And that on the following day,
March 30, 1895, the plaintiff answered that letter in writing. The
defendants then having been called upon to produce such letter, a
copy was offered in evidence, when counsel for the defendants said:
"If this is offered as a conveyance, I object to it on the ground it does
not conform to the statute." In response to this objection the plain-

tiff's counsel said, "I offer it as a communication from Mrs. Reich to Mrs. La Bau in answer to the letter which has been described;" and the court said, "It is not a conveyance; it is merely as a communication," whereupon the copy was admitted in evidence, and is as follows:

"March 30th, 1895.

"My dear Mrs. La Bau:—As per your request yesterday I write this letter to say that I hereby release my farm at Brentwood, L. I., described in the deed which you recorded in Suffolk Co. with the understanding that you are to pay me the $39,639.00 the balance of the purchase price on or before March 1st, 1897. Enclosed please find duplicate list of all horses, cows, poultry, carriages, wagons, furniture, bedding and all the chattels, &c., &c., according to your request.

"Very respectfully yours,          Elizabeth Reich. [Seal.]"

Enclosed in this letter was a writing which commenced: "Bought of Elizabeth Reich, by Mrs. Alicia V. La Bau, Mch. 29th, 1895." This was followed by a list of furniture and other articles, and the statement: "This amount is deducted from the $3,133.00 you loaned me October 31st, 1894. The balance of $361.00 still due to be credited as part consideration of purchase of my hundred acre farm at Brentwood, L. I. Price $40,000. The balance $39,639.00 to be paid me by you on the 1st day of March, 1897." The witness then testified that he delivered the original of that letter to Mrs. La Bau at her residence; that in about nine or ten days after Moyer took possession of the premises, a barn on the farm and some horses in it were burned; and that Mrs. La Bau made a claim for some insurance on the property destroyed. Proof of loss under this policy was introduced, and in that proof of loss it is stated that the property insured belonged to Alicia V. La Bau; that on the 5th of April, 1895, a fire occurred, by which the property insured was injured and destroyed to the amount of $———; that the insured claimed of the Sun Insurance Company the sum of $2,000. This claim was signed and sworn to on the 17th of April, 1895, by the defendants' testatrix; and subsequently an agreement to arbitrate the amount of the loss was executed by the insurance companies and the defendants' testatrix, but whether any award was ever made by the arbitrators does not appear; nor does it appear to whom any loss under this policy of insurance was paid, if to any one. When, on cross-examination, the witness was asked to repeat the conversation between himself and Mrs. La Bau to which he had upon his direct examination testified, he said that he could not repeat it, as he had no present recollection of what he had told of that conversation the day before; that, unless his testimony of the day before was read to him, he could not remember the exact words; and that at that time his mind was absolutely blank as to what he testified to in regard to that conversation.

Mr. Bell, the attorney who had figured in the transaction, was then examined. He testified that the lease was prepared by him, and executed before him as a notary public; that the lease was prepared under the directions of the defendants' testatrix, and after the lease was executed by the plaintiff's husband one copy was delivered to the tenant and one retained by the witness, and the next day he delivered the one that he retained to Mrs. La Bau; that at that time she had a

letter, which she had prepared, or that she wrote while the witness was present, addressed to the plaintiff, and asked the witness to deliver it to her; that at the same time she stated to the witness that "she had decided to purchase the property, and pay the consideration mentioned in the deed on or about the 1st of March, 1897; that she would like to have the letter from Mrs. Reich, and had made this lease of the property, and one of the parts of the lease might require her to deliver a deed of the property to the tenant; that she desired Mrs. Reich to release to her the farm, and also the chattels on the farm, and to charge her on account of the loan that she had made to Mrs. Reich the amount of the chattels, and the surplus remaining to be credited as a part payment on the purchase price of the property." Bell stated that he delivered the letter to the plaintiff, and reported to the plaintiff what Mrs. La Bau had stated; that the plaintiff opened the letter, and read it aloud, and the letter was substantially what Mrs. La Bau had said to him in the conversation which he had detailed; that subsequently he called on Mrs. La Bau, and she stated that she had received a letter from the plaintiff, and it was entirely satisfactory. Upon cross-examination the witness testified that he was acting for both parties all through these proceedings; that the lease was made with the approval of Mrs. Reich; that he understood that Mrs. La Bau relied implicitly in Mrs. Reich and her husband in whatever they might say or do. Upon this evidence the plaintiff rested.

The defendants then moved to dismiss the complaint upon the ground that, the plaintiff having alleged that the plaintiff sold and conveyed the property on March 28, 1895, that was absolutely unproved, no such evidence having been produced; and also that the writings constituting the contract as evidenced by the lost letters are insufficient, and that the contract, being regarded as oral, is void by the statute of frauds; and also that the cause of action accrued more than six years prior to the death of Mrs. La Bau on August 16, 1902. In denying that motion the learned trial judge stated that:

"The argument overlooks the fact that it was not a mortgage. It was an absolute deed in fee. It is made a mortgage by parol evidence, and all the plaintiff does here is to show, also by parol evidence, that the mortgage which was intended when the absolute deed was given by Mrs. Reich, and that the tenor of the deed as originally drawn, delivered, and recorded, continued in full force as a deed in fee, as it always had read. Parol evidence was given to show that originally it was in the nature of a mortgage. Parol evidence was properly given to show that subsequently the deceased took advantage of the option which she has a right to exercise of treating the transaction no longer as a mortgage, but now as a deed in fee as it read. The statute of frauds has nothing to do with it."

The defendants then introduced evidence tending to show that the plaintiff and her husband treated the property as belonging to them subsequent to the date of this alleged transaction; that shortly after this deed was executed, and in January, 1895, judgments aggregating more than $20,000 were entered against the plaintiff, transcripts of which were filed in Suffolk county, the county in which this property was located. The parties then having rested, the defendants again moved to dismiss the complaint upon substantially the same grounds, which motion was denied, whereupon the court left the question to

the jury, charging that it was quite clear that the original transaction between these parties, as to which there seems to be no dispute, was a loan by Mrs. La Bau to Mrs. Reich of $3,133, and that this loan was secured by the deed delivered to Mrs. La Bau upon the understanding that the deed was to operate as a mortgage; that this transaction made Mrs. La Bau the mortgagee of the property; that upon the face of the transaction she was the owner, but the substance of it was that she was a mortgagee for the security of her $3,133; that in March of the following year the property was leased to one Moyer; that the contention of the plaintiff is that Mrs. La Bau "about this time expressed her intention to purchase the property, and to exercise the option which had been previously given to her, namely, to take the property for $40,000, the consideration specified in the deed"; that "proof has been given to you tending to show that she did exercise that option, and that the transaction which had previously been a mortgage was, by the understanding and agreement of the parties, left to its natural operation as a deed—that is, turned into a sale—and that the deed then already on record was to remain thereafter just as it read, as a deed transferring the property to Mrs. La Bau. She was no longer to be the mortgagee, but the owner. Well, the evidence on that head is all one way. The defendants have no independent evidence with regard to it." And then, after calling the attention of the jury to the evidence, it is summarized as follows:

"You have the uncontradicted testimony of Reich and Bell as to the main facts claimed to be corroborated by the documentary evidence in the case. Taking that testimony, and scrutinizing it with the utmost care and caution, if you believe it to be true, and find that a bargain at or about the time was made when the Moyer lease was executed that thereafter the property should be the property of Mrs. La Bau for $40,000 (the amount specified in the deed, which was already on record), and that thereafter the mortgage debt was paid by the transfer of the personal property and the application of the balance to the consideration for the purchase of the real estate, and that thereupon, by the clear understanding of the parties—I mean an understanding clear to you —Mrs. La Bau held the property as owner for the agreed consideration, and no longer as mortgagee, then your verdict should be for the plaintiff."

To that charge the defendants excepted, and the court was specifically asked to charge that, "the plaintiff having admitted that the original deed of October 31, 1894, was really a mortgage, she cannot rely on such a deed as a consideration to support a promise to pay by Mrs. La Bau in March, 1896, and unless the jury are fully satisfied that a new deed in the form heretofore charged was made and delivered in March, 1895, by Mrs. Reich to Mrs. La Bau, the defendants are entitled to a verdict," which was declined, and the defendants excepted, and this presents the main question in this case.

In determining this question it is quite necessary that we should have a clear conception of the rights and obligations of the respective parties to this transaction upon the execution and delivery in October, 1894, of the deed in question. It recited a consideration of $40,000, but there was no promise to pay that sum. In consideration of that amount it purported to convey to Mrs. La Bau the property in question; but it is conceded that that conveyance, though absolute upon its face, was, in effect, a mortgage to secure the payment of the sum

of $3,133, with an option to Mrs. La Bau to purchase the property within one year for the consideration expressed in the deed. No liability could be predicated upon the statement in the deed that the consideration for the conveyance was the payment of $40,000, as a recovery of that amount was barred by the statute of limitations prior to the death of Mrs. La Bau, and the defense of the statute was pleaded in the answer. Coleman v. Second Ave. R. R. Co., 38 N. Y. 201. The deed was absolute on its face, but was in effect a mortgage. Therefore the relation between the plaintiff and Mrs. La Bau was that of mortgagor and mortgagee, with all the rights and obligations incident to that relation. "The fact once established, either by the terms of the conveyance or by other evidence, that the grant was intended as a mortgage, the rights of the parties are measured by the rules of law applicable to mortgagors and mortgagees; and the conveyance remains but a mortgage until the equity of redemption is foreclosed, and the mortgagee cannot have ejectment against the mortgagor, or those claiming under him, until after foreclosure." Carr v. Carr, 52 N. Y. 251; Horn v. Keteltas, 46 N. Y. 605; Murray v. Walker, 31 N. Y. 399; Clark v. Henry, 2 Cow. 324.

In Murray v. Walker, 31 N. Y. 399, in discussing the rights as between a mortgagor and mortgagee, it was said:

"What is a mortgage in its comprehensive sense? Kent says (volume 4, p. 151, of his Commentaries): 'A mortgage is the conveyance of an estate by way of pledge for the security of debt, and to become void on payment of it. The legal ownership is vested in the creditor, but in equity the mortgagor remains the actual owner until he is debarred by his own default or by judicial decree.' In this case the plaintiff, by the assignment of the certificate and the patent, became the legal owner. * * * Plaintiff has at all times since the transfer of the certificate to him been virtually the legal owner; while Stanford was at all times down to the foreclosure sale the actual owner. This is simply, therefore, an action of ejectment by the mortgagee against the owner of the equity of redemption; in other words, the actual owner in possession. The fact that the conveyance under which the plaintiff claims, namely, the patent, is absolute on its face, makes no difference. The certificate which was the foundation of the patent, and as holder of which the plaintiff procured the patent, recited that it was assigned merely as security."

In Clark v. Henry, 2 Cow. 327, the chancellor said:

"Though the conveyance be absolute in terms, yet, if the intention appears to make the estate redeemable, it will continue so until foreclosure; for the maxim of equity is that the estate cannot be a mortgage at one time and an absolute purchase at another."

And on appeal, in discussing the effect of an assignment of a mortgage, which, though absolute on its face, was intended as security, Woodworth, J., in the Court of Errors, says:

"There is no exception to the rule, 'once a mortgage, and always a mortgage.' No agreement of the parties can affect the doctrine as to redemption in a court of equity."

And Savage, C. J., says:

"That a deed absolute on its face, but accompanied by an agreement, in writing or by parol, operating as a defeasance, is a mere mortgage, is perfectly well settled. The character of the transaction between the parties being established, the rights of mortgagor and mortgagee are easily ascertained. It is a well-settled principle that chancery will not suffer any agreement in a mort-

gage to prevail which shall change it into an absolute conveyance upon any condition or event whatever. * * * 'Once a mortgage, always a mortgage.' "

In Newcomb v. Bonhan, 1 Vern. 7, where an absolute conveyance was given, with a defeasance upon payment of £1,000 during the life of the grantor, and the grantor covenanted that it should never be redeemed after his death, yet redemption was decreed; and the chancellor, in deciding the question from which the appeal was taken, says:

"There is no principle better settled than that every contract for the security of a debt by the conveyance of real estate is a mortgage; and all agreements of the parties tending to alter, in any subsequent event, the original nature of the mortgage, and prevent the equity of redemption, are void. If the conveyance or assignment was a mortgage in the beginning, the right of redemption is an inseparable incident, and cannot be restrained or clogged by agreement. Though the conveyance be absolute in terms, yet, if the intention appear to make the estate redeemable, it will continue so until foreclosure, for the maxim of equity is that the estate cannot be a mortgage at one time and an absolute purchase at another. This is an elementary rule on this subject, and the object of it is to prevent imposition and fraud on the mortgagor."

In Odell v. Montross, 68 N. Y. 499, it was found that the plaintiff, being indebted to the defendant for money advanced, executed to the defendant a deed of the premises described in the complaint, which deed was absolute on its face, and purported to convey the fee, but that it was executed as and intended as a security for the said indebtedness then existing and what might thereafter accrue; but it was agreed and intended by the parties that the plaintiff, upon payment, should have the right to redeem, and should be entitled to a reconveyance; that in September, 1866, the defendant paid to the plaintiff, at his request, the sum of $50, and the plaintiff then and there signed and delivered to the defendant a paper, of which the following is a copy: "New York, Sept. 17, 1866. Received from William Montross fifty dollars, in full satisfaction for all claims and demands whatsoever as to the conveyance of property, or otherwise, up to this date. Thomas B. Odell;" and that such payment was made and received and such receipt signed and delivered with the intention of the parties that the same should be a full settlement of all claims of the plaintiff to said lands and premises and of all claims to any reconveyance thereof. As a conclusion of law the court found "that the deed was to be considered as a mortgage; that the payment of the fifty dollars and the receipt given therefor did not operate to change the nature of the deed from a security to an absolute conveyance, nor to release plaintiff's right to redeem, and that upon payment of the sums due from plaintiff to defendant and the sums paid out by the latter plaintiff was entitled to redeem"; and judgment was directed accordingly. This judgment was reversed by the General Term of the Supreme Court upon the ground that the rule "once a mortgage, always a mortgage," may be forfeited or surrendered by the grantor for a valuable consideration when the agreement that a deed absolute on its face was a mortgage was by parol (6 Hun, 155); but on appeal to the Court of Appeals the judgment of the General Term was reversed, and that of the Special Term affirmed. Judge Allen, delivering the opinion of the court, said:

"Prior to the transaction of the 17th of September, 1866, * * * the relation of the parties in respect to the lands now sought to be redeemed was

that of mortgagor and mortgagee with all the incidents of that relation. * * * A conveyance absolute in terms given as a security is a mortgage with all the incidents of a mortgage, and the rights and obligations of the parties to the instrument are the same as if the deed had been subject to a de-' feasance expressed in the body of the instrument, or executed simultaneously with it. * * * The estate remaining in the mortgagor after the law day has passed, before foreclosure, is popularly but erroneously called' an equity of redemption, retaining the name it had when the legal estate was in the mortgagee, and the right to redeem existed only in equity. Although a misnomer, it does not mislead. The legal estate remains in the mortgagor, and is subject to dower and curtesy, to the lien of judgments, may be sold on execution, and may be mortgaged or sold as any other estate in lands; while the mortgagee has but a lien upon the lands as a security for his debt, and the land is not liable to his debts, or subject to dower or curtesy, or any of the incidents of an estate in lands. * * * So far as the entire estate is concerned, there is but one title, and this is shared between the mortgagor and mortgagee; the one being the general owner and the other having a lien, which, upon a foreclosure of the right to redeem, may ripen into an absolute title; their respective parts, when united, constituting one title. * * * The defendant claims to have extinguished the right of redemption and acquired the entire estate by the payment of the fifty dollars, and in virtue of the written acknowledgment of its payment for the purposes named in it. The paper is, in terms, ambiguous. * * * But the transaction was explained upon the trial, and shown to have been intended as a full settlement of all claims of the plaintiff to the lands and premises and of all claims to a reconveyance thereof. If this payment and receipt did operate to change the nature of the deed from a mortgage to an absolute conveyance, and is a release of the right to redeem, so that the mortgagee became seised in fee simple by a union of the estate of the mortgagor and mortgagee discharged of the mortgage, the defense to the action is perfect. It cannot be claimed that the written paper ex proprio vigore could have that effect. It does not profess to release the right of redemption, or to convey any lands or interest in lands. No lands in particular are referred to. No agreement can be spelled out of the instrument which would be specially performed, and it could not be aided and made a perfect contract to release or convey lands by parol proof. The whole force of the transaction, as affecting the rights of the plaintiff, is in the payment and receipt of the fifty dollars with intent to extinguish the title of the plaintiff. This cannot operate as an estoppel, or take the case out of the statute of frauds. * * * The plaintiff having a recognized legal estate in fee, he could only be divested of it (except by way of estoppel, which does not exist) by some instrument which would be valid under the statute of frauds, and in compliance with the statute prescribing the mode and manner of conveying lands. The statute of frauds (2 Rev. St. p. 136, pt. 2, c. 7, tit. 2, § 8) is very explicit, and needs no interpretation in its application to this case. It declares that every contract for the sale of any lands, or any interest in lands, shall be void, unless in writing, and subscribed by the party by whom the sale is to be made. The whole contract—that is, the agreement to sell, and the description of the lands or the interest in lands agreed to be sold—must be in writing, and subscribed by the party. The other statute referred to (1 Rev. St. p. 738, pt. 2, c. 1, tit. 2, § 137) is equally applicable to this case. To hold that the plaintiff had not a fee would be to overthrow the well-established relation of mortgagor and mortgagee, and reverse their respective positions in respect of the legal estate in the lands mortgaged. The statute declares that every grant in fee or of a freehold estate shall be subscribed and sealed by the person making the grant or his lawful agent. If a seal only was wanting to make the instrument relied upon by the defendant valid for the purposes intended, it is possible the court might compel the sealing, but that would not supply the intrinsic defects of the paper writing itself. * * * The defendant could have acquired the estate and interest of the plaintiff either by a deed poll as a release, or a grant in any form sufficient in terms and mode of execution to convey an estate in lands. * * * The rights of the mortgagor and his estate can only be foreclosed by due process of law, or a release by deed in proper form, or a conveyance sufficient to pass the title to an estate in fee. The defendant has not

purchased the equity of redemption or acquired the estate of the plaintiff by any proper release or conveyance."

I do not find that this case has ever been questioned; but it has been cited in Kraemer v. Adelsberger, 122 N. Y. 476, 25 N. E. 859, and in Cooley v. Lobdell, 153 N. Y. 600, 47 N. E. 783. This, then, was the relation between the parties. They stood as mortgagor and mortgagee, with the rights incident to that relation, and no agreement between the parties could change that relation, except such as would be sufficient to divest the plaintiff of her title to the property. It is entirely clear that, if this plaintiff had filed a bill to redeem at any time within 10 years after the execution of this instrument, she would have been entitled to redeem, and no agreement between the parties not sufficient to legally divest the plaintiff of her legal title to the property would have been sufficient to foreclose her of that right of redemption; and it would seem to follow that no verbal agreement between the parties could vest the legal title to the mortgaged premises in the mortgagee, or impose upon her an obligation to pay an amount verbally agreed upon as the consideration for a conveyance of the property. The recital of the consideration in the conveyance becomes unimportant when the fact is once established that the instrument was not an actual conveyance, but a mortgage.

The plaintiff's right to recover must depend upon a valid agreement to pay the sum of $40,000 for a legal conveyance of the property in March, 1897, and to sustain such a promise it must appear that the defendants did at that time convey or assure to Mrs. La Bau a valid title to the property. If this instrument had been upon its face a mortgage when executed and delivered in October, 1894—and, as I understand the rule, the rights of the parties are exactly the same as if the instrument had been on its face a mortgage—the question is whether there was a valid conveyance, or agreement to convey, by which Mrs. La Bau then agreed to pay $40,000, so that the agreement to pay that sum can be enforced in an action at law; for, if there was no such contract or conveyance, it seems to follow that no obligation existed on behalf of Mrs. La Bau to pay to the plaintiff the $40,000, the amount mentioned in the conveyance. Keeping in mind that the legal title to this property has never passed from the plaintiff to Mrs. La Bau; that this instrument was a mortgage, and not a conveyance; and that Mrs. La Bau's interest in this property was that of a mortgagee, and nothing more—to vest in her a legal title to the property it was necessary that the plaintiff should execute a conveyance sufficient to pass title to real estate. The learned trial judge considered that a parol agreement made after the execution of the mortgage could notify the parol agreement by which the conveyance, though absolute on its face, was a mortgage, and thereupon the mortgage was converted into an absolute deed; or, as the court states it in denying the motion to dismiss the complaint:

"The argument overlooks the fact that it was not a mortgage. It was an absolute deed in fee. It is made a mortgage by parol evidence, and all that the plaintiff does here is to show (also by parol evidence) that the mortgage which was intended when the absolute deed was given by Mrs. Reich, and that the tenor of the deed as originally drawn, delivered, and recorded, continued in

full force as a deed in fee, as it always had read. Parol evidence was given to show that originally it was in the nature of a mortgage. Parol evidence was properly given to show that subsequently the deceased took advantage of the option which she had a right to exercise of treating the transaction no longer as a mortgage, but now as a deed in fee, as it read."

I think this overlooks the essential distinction between a mortgage and an absolute conveyance. A mortgage is in fact, on its face, an absolute conveyance of the property, there being incorporated in the conveyance a defeasance; but it is none the less a mortgage because the defeasance is either a separate instrument or rests in a parol agreement made at the time of the execution and delivery of the conveyance. In either case the conveyance is nothing but a mortgage by which the title to the property is not conveyed, but the grantor or the mortgagor remains the legal owner of the property subject to the lien of the mortgage; and, once the fact is established that the conveyance is a mortgage, then the rights of the parties are governed by the rules that exist in relation to mortgagors and mortgagees, and not as to grantor and grantee; and a subsequent parol agreement can no more change that relation than it could if the instrument was upon its face what in reality it was—a simple mortgage. The cases all hold that, once that relation is established, no verbal agreement between the parties is sufficient to turn the instrument which, when executed and delivered, was a mortgage, into an absolute grant. Certainly, if it could not be turned into an absolute grant, so as to vest Mrs. La Bau with the title to the property, by which she could maintain ejectment as against the mortgagor, it cannot be turned into an absolute grant, so as to entitle the mortgagor to recover the amount of the consideration which Mrs. La Bau was to pay upon acquiring an absolute title to the property. The plaintiff being the owner of the property subject to Mrs. La Bau's interest as a mortgagee, that property could be divested in one of two ways—either by a conveyance sufficient to transfer the legal title to the property, or by a foreclosure by Mrs. La Bau of her mortgage, and a sale under that foreclosure. Section 137 of the Revised Statutes (1 Rev. St. p. 738, pt. 2, c. 1, tit. 2) provides that "every grant in fee or of a freehold estate, shall be subscribed and sealed by the person from whom the estate or interest conveyed is intended to pass, or his lawful agent." The letter from Mrs. La Bau was in form a notice that she elected to exercise an option which it was claimed she had to take a conveyance of the property, or to treat the conveyance as absolute, and in which it is claimed she stated that she would pay the consideration named in the original instrument not later than March, 1897; and, based upon that, she requested a conveyance or release of the property from the plaintiff; and in answer to that the plaintiff is alleged to have written as follows: "As per your request yesterday I write this letter to say that I hereby release my farm at Brentwood, L. I., described in the deed which you recorded in Suffolk county with the understanding that you are to pay me the $38,639.00 the balance of the purchase price on or before March 1st, 1897." When this instrument was offered in evidence, it was objected to as not sufficient to convey an interest in the real property under the Revised Statutes, when it was expressly stated that it was not offered as such a conveyance, but was received

merely as a communication between the parties. It is quite evident that this was not a compliance with the statute. It contained no words of grant, did not purport to convey any property, and certainly vested in Mrs. La Bau no title to the property which had up to that time remained in the plaintiff.

I think, therefore, the evidence failed to show that the relation in connection with this property as between the plaintiff and Mrs. La Bau ever changed after the execution and delivery of the instrument in October, 1894, which was nothing but a mortgage, and that there was no obligation of Mrs. La Bau which could be enforced for the $40,000, the consideration expressed in the conveyance.

There are exceptions by the defendants to the admission and rejection of evidence which would require serious attention but for the view that we take of the question discussed, from which it follows that no cause of action was proved, and it is not therefore necessary that they should be considered.

It follows that the judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and McLAUGHLIN and HATCH, JJ., concur.

LAUGHLIN, J. (dissenting). This action is brought to recover the balance of the purchase price of premises alleged to have been conveyed by the plaintiff to the testatrix of the appellants. The plaintiff alleges that on or about the 28th day of March, 1895, she sold and conveyed the premises to the decedent· for the agreed consideration of $40,000, payable by crediting thereon the sum of $361, which plaintiff owed to her, and the balance of $39,639 to be paid on or before the 1st day of March, 1897; that no part of this balance has been paid, and judgment is demanded therefor, together with interest from the date when it became due and payable. The material allegations of the complaint were put in issue by the answer, which also sets the validity of the contract on the ground of the statute of frauds, and pleads payment and the statute of limitations.

Upon the trial the plaintiff showed the execution and delivery by her to the decedent of a full covenant warranty deed of the premises on the 31st day of October, 1894, reciting a consideration of $40,000, and that possession thereof was surrendered to the decedent on the 28th day of March, 1895. The premises consisted of a tract of 100 acres of land at Brentwood, in Suffolk county, and the plaintiff at the time of executing this deed had good title thereto. The appellants showed by the testimony of the plaintiff upon cross-examination that contemporaneously with the execution and delivery of the deed she signed and delivered to decedent a receipt in the following words:

"Received, New York, October 30th, 1894, of A. V. La Bau the sum of Three thousand one hundred and thirty-three dollars as a loan repayment of the same to be secured by the making, execution and delivery by me on the 31st day of October, 1894, of a deed conveying the property owned by me and standing in

my name at Brentwood, Long Island, in the State of New York. Elizabeth. Witness A. H. Stevens."

The plaintiff then gave evidence tending to show, and sufficient to warrant the jury in finding, that at the time of the execution of the deed she did owe the decedent the sum specified in the receipt, and that there was an agreement between them to the effect that, if the decedent should elect within a year to purchase the property speci- fied in the deed, possession would then be delivered, and the terms of payment of the balance of the purchase price over and above plain- tiff's indebtedness to her would then be agreed upon; that on or about the 28th day of March, 1895, the decedent did so elect to purchase the premises, and possession thereof was accordingly de- livered on that day upon the express agreement that the balancè of the purchase price as stated in the complaint, which was arrived at by crediting the agreed value of personal property upon the prem- ises which plaintiff owned and also sold to decedent upon the plain- tiff's existing indebtedness to her, was to be paid on or before the 1st day of March, 1897, and this was evidenced by correspondence between the parties; that at the time the conveyance was executed the parol agreement between the parties was that the decedent was not bound to purchase, and, if she did not so elect, it was to operate as a mortgage; that decedent contemplated purchasing, and the in- strument was executed as a conveyance, instead of a mortgage, by mutual agreement, and for the express purpose of avoiding the ne- cessity of executing a deed later on should the decedent elect to treat it as a purchase, and that she did so elect, and accepted the deed as a sufficient conveyance; that on said 28th day of March, 1895, the decedent leased the premises as her own, giving the lessee the priv- ilege of purchasing the same for $45,000; that on the 1st of April thereafter she procured insurance in her own name upon the per- sonal property, and after a fire preferred a claim against the insur- ance company for the loss, and executed an agreement to arbitrate the loss; and that the balance of the purchase price has not been paid. This action was commenced on the 19th day of January, 1903 —within six years after the balance of the purchase price became payable. Consequently the plea of the statute of limitations is not well taken. Nor has the statute of frauds any application. Posses- sion has been delivered to the purchaser, and the plaintiff has fully performed on her part all of the conditions, as the contract was con- strued by the parties, upon which her right to recover the balance of the purchase price depend; the promise to pay contained in a suffi- cient memorandum signed by the decedent.

The principal contention on the part of the appellants is that the instrument of October 31, 1894, although a deed in form, was in fact a mortgage, and that, therefore, it was ineffectual for the purpose of conveying the premises to the decedent. Even though this conten- tion should be sustained, it does not follow, I think, that plaintiff was not entitled to recover. It is to be borne in mind that she sues for the balance of the purchase price, and she shows compliance with every condition precedent agreed upon by the parties to entitle her thereto. Even though the parties were mistaken in the legal effect

of the instrument they agreed upon, it is sufficient for the purpose of conveying title and of entitling plaintiff to payment. If, through mistake of law or otherwise, it is insufficient to convey the title, then the defendants should have alleged the facts, and demanded by way of counterclaim a further conveyance, which the court could, if necessary, decree as a condition of compelling payment.

I fail to see any merit in the position taken by appellants. Their testatrix had a good record title, and they seek to defeat it by evidence dehors the record, from which they claim, in effect, that she was a mortgagee in possession. They do not show that they obtained possession in that right, and the plaintiff shows quite clearly that the possession was given pursuant to the agreement to purchase. But even with the evidence that the deed was to be considered as a mortgage only in case the decedent did not wish to complete the purchase, still the contention of the appellants should not be sustained. The plaintiff, by electing to give the decedent possession pursuant to her parol election to purchase, and to demand the balance of the purchase price, and by bringing this action therefor, which is an irrevocable election, would be forever estopped from asserting any right of redemption in the premises.

The appellants insist that the plaintiff has an equity of redemption in the premises, which she never asserted, and does not now claim, and is estopped from claiming. It therefore becomes unnecessary to decide whether the doctrine of the cases of Mooney v. Byrne, 163 N. Y. 86, 57 N. E. 163, or Hughes v. Harlam, 166 N. Y. 427, 60 N. E. 22, and kindred cases, is applicable to the case at bar, or whether the defeasance or equity of redemption which was created by parol could be released by parol, so that the decedent in any event obtained a complete title on or about the 28th day of March, 1895, when she made her election to purchase, or whether the fact that the express purpose of having the instrument in the form of a deed was to have it serve and stand as a conveyance of the title, without the execution of any further grant, in the event that the grantee so elected within the time specified, distinguishes the case from those last cited, and renders the doctrine "once a mortgage, always a mortgage," inapplicable. These would be interesting questions, but their consideration is, I think, unnecessary. The learned court conducted the trial without error prejudicial to the appellants. The letter, Exhibit H, was not shown to have been authorized by plaintiff, and was therefore properly excluded.

I am of opinion, therefore, that the judgment and order should be affirmed.