EXPERIENCE M. CONOVER, Plaintiff, v. GEORGE W. PALMER and FRANK D. STINSON, as Executors of JAMES W. ELWELL, Deceased, Defendants.

(Supreme Court, Kings Special Term for Trials, July, 1908.)

Modification and merger of contracts — Destruction of instrument embodying defeasance.
Mortgages — Title and rights of parties — In general — Title or interest of parties — Not affected by destruction of instrument.

Where, simultaneously with the execution and delivery of a deed which though absolute in form was given merely as security for an indebtedness, a defeasance agreement was executed and delivered, the subsequent cancellation, for a consideration, of said defeasance by its physical destruction with intent to make the deed absolute and cut off the right of redemption, was ineffectual for that purpose.

ACTION to have a deed absolute in form declared a mortgage and for an accounting.

Bohannan & Honnecker (Ernest J. Magen, of counsel), for plaintiff.

16

Robinson, Biddle & Benedict (Edward Glenville Benedict, of counsel), for defendants.

STAPLETON, J. In November, 1886, plaintiff, Alfred Conover, her husband, and one Jacob P. Snyder, executed and delivered to James W. Elwell a deed of real estate situated in Atlantic City, county of Atlantic, State of New Jersey. Jacob P. Snyder (who was a tenant in common with the plaintiff in the ownership of the property described in the deed and other premises) and the plaintiff, at or about the same time, actually partitioned their holdings; and, in execution of that purpose, Snyder joined in the deed above mentioned; and he has, therefore, no interest in the nature or effect of that instrument.

It is conceded by all the parties that the deed, although absolute in form, was given as security for an indebtedness. Plaintiff claims that the obligation designed to be secured was her personal indebtedness of $1,500. The defendants contend that the indebtedness of herself and that of her husband to the grantee, Elwell, amounting to $15,000, was the obligation which the plaintiff agreed to secure by a mortgage in the form of a deed. Simultaneously with the execution of the deed a defeasance agreement, which has since been lost and proof of the contents of which has been given and which will hereafter be referred to, was executed. James W. Elwell, the grantee in the deed, died in September, 1889, leaving a last will and testament which was admitted to probate, and in which he nominated the defendants as his executors, and by which he vested them with power to sell his real estate. Letters testamentary were issued to them by the Surrogate's Court of Kings county, in this State, in 1889. The executors afterward sold the property described in the deed, and this action is brought for an accounting and for a redemption in money representing the value of the land at the time of the sale by the executors, or at the time of the trial, according to the proofs. A volume of business was transacted between Alfred Conover and the defendants' testator, none was ever directly had between the testator and the plaintiff; and whatever transactions were had between the plain-

tiff and the defendants' testator were conducted by plaintiff's husband, Alfred Conover, who was endowed by her with the fullest authority oral authorization could confer.

On June 16, 1890, Alfred Conover wrote to Elwell as follows:

" ABSECOM, *June* 16th, 1890.

" JAMES W. ELWELL, Esq.:

" DEAR SIR.— * * *  We have a narrow piece in the canal binding all that you have, which we desire to sell, commencing on the front at thoroughfare and running back 1,500 feet, 25 feet wide. * * *  Do you want the strip of land for that, $500 cash, the balance on account with cancellation of any claim in conditional deed that you now hold from us, calling it square so far as the property goes?  I need the money in my bank business, and I must sell to somebody.  Let me hear from you by return mail."

" Yours truly,
"A.  CONOVER."

On July 4, 1890, Alfred Conover wrote to Elwell as follows:

"ABSCOM, *July* 4, 1890.

" JAMES W. ELWELL, Esq.:

" DEAR SIR.— Yours of the 30th received Wednesday eve on my arrival home.  Am glad you are coming down.  Let me hear when you think you are coming.  The $500 is very important to me as I have no other way just now, but think will have other ways connected with the same property after while. * * *

" Yours truly,
"A.  CONOVER."

On August 6, 1890, plaintiff and her husband gave to Elwell an absolute deed of the piece of land described throughout the testimony and in the communications as " canal binding," taking from Elwell a receipt for $1,000 on account of the original indebtedness; $500 in cash which was paid on September 24, 1890, the receipt of which was acknowledged in writing on that day; and at the same time Alfred Conover

delivered the defeasance agreement to Captain I. G. Adams, the agent of the defendants' testator, who, at the time, and in the presence of Alfred Conover, physically destroyed it.

On August 6, 1890, Alfred Conover wrote to Elwell, narrating the transaction of that day as follows:

"CAMDEN, N. J., *August* 6, 1890.

"JAMES W. ELWELL, Esq.:

"DEAR SIR.— I gave deed this morning to I. G. Adams, he passing same to clerk for record. At same time in my presence he tore the contract up that we had, completing the job entirely.

"Yours truly,

"A. CONOVER."

Mr. Elwell survived these transactions for nine years, undisturbed by any claim of the plaintiff at variance with the import of finality, which the history written by the parties themselves to my mind indisputably establishes. The executors of Mr. Elwell's will enjoyed security from attack for some time after their qualification.

The property increased subsequently in value. Promoters and developers sought the owners. Alfred Conover was approached by them. Elwell was dead. Conover evidently failed to remember the destruction of the defeasance agreement, and was under the impression, when he gave his testimony upon a former trial of this action, and with which he was confronted here, that it was lost by him, and only when shown his written declaration made at the time did he remember that it was delivered to Elwell's agent for cancellation and physical destruction. It was competent for him to give proof of its contents under the circumstances.

In the light of the large and frequent transactions between the parties, the completeness of Alfred Conover's authority as agent for his wife, Mr. Elwell's business capacity, the course of dealing between the parties, the attitude and conduct of the plaintiff and her husband and the written communications which passed between them and Elwell, it requires testimony in support of plaintiff's version of the contents of the cancelled and destroyed defeasance agreement

more convincing than is given by the husband of the plaintiff, who is practically though not legally interested in the result, whose memory to say the least is infirm, and whose writings are so irreconcilable with and hostile to his narrations upon the trial. I accept, unhesitatingly, defendants' description of the agreement, that the obligation, for which the security was given, was the total indebtedness of the plaintiff and her husband, Alfred Conover, growing out of the transactions personally or as master of vessels concerning which he or she had any transactions with Elwell.

I am clearly convinced that it was the design of the parties to cancel for a consideration the agreement of defeasance, by its physical destruction on August 6, 1890, and to make absolute the deed of November, 1886. I have ascertained eminent authority, without the State, precisely applicable to sustain the accomplishment of that design. In *Trull* v. *Skinner*, 17 Pick. 215, Chief Justice Shaw said: " The Court are of opinion that, where an absolute deed is given, accompanied by a simultaneous instrument, operating by way of defeasance, and afterward the parties, by fair mutual stipulations, agree that the defeasance shall be surrendered and cancelled, with an intent to vest the estate unconditionally in the grantee, by force of the first deed, by such surrender and cancellation the estate becomes absolute in the mortgagee. The original conveyance stands unaffected in form and legal effect; it conveys an estate in fee; the only party who could even claim a right to deny it that operation, by engrafting a condition upon it, has voluntarily surrendered the only legal evidence, by which that claim could be supported, and is thereby estopped from setting it up. Such cancellation does not operate by way of transfer, nor strictly speaking by way of release working upon the estate, but rather as an estoppel arising from the voluntary surrender of the legal evidence, by which alone the claim could be supported: Like the cancellation of an unregistered deed, and a conveyance by the first grantor to a third person without notice. The cancellation reconveys no interest to the grantor, and yet taken together, such cancellation and conveyance to a third person make a good title to the latter by operation of

law, It gives a seisin *de facto,* a conveyance by deed duly registered being for many purposes equivalent to livery of seisin; Higbee v. Rice, 5 Mass. 352; it is good against the grantor and his heirs by force of the second deed, and it is good against the first grantee, and all claiming under him, by force of the registry acts. Commonwealth v. Dudley, 10 Mass. 403. But the point now decided, of the effect of cancelling an instrument of defeasance, seems to be settled by authorities. Harrison v. Phillips Academy, 12 Mass. 456; Rice v. Rice, 4 Pick. 349."

The current of authority in this State, however, is so strong and consistent to the effect that " The plaintiff having a recognized legal estate in fee, she can only be divested of it (except by way of estoppel which does not exist) by some instrument which would be valid under the statute of frauds and in compliance with the statute prescribing the mode and manner of conveying lands," (Odell v. Montross, 68 N. Y. 499, 506), that I am constrained to disregard the Massachusetts case. In the Odell case it was held that the payment to and the receipt by a mortgagor acknowledged in writing of a sum of money to extinguish his title was inefficient. In Reich v. Dyer, 91 App. Div. 240; appeal dismissed, 180 N. Y. 107, it was held that a subsequent parol agreement that such a deed should be treated as an absolute conveyance was insufficient for that purpose. In Luesenhop v. Einsfeld, 184 N. Y. 590, reversing same case, 93 App. Div. 68, on dissenting opinion of Hiscock, J., below, it was decided that a release general in form was not sufficient to extinguish the title of the grantor in a deed which was really a mortgage.

I am, therefore, compelled to hold that the deed of November, 1886, was a mortgage. The plaintiff has a right to redeem and is entitled to an accounting and to a money judgment without costs for such sum as may be found to be due, if any, in excess of the combined indebtedness, principal and interest, however incurred, of herself and Alfred Conover, her husband, to the defendants. Mooney v. Byme, 163 N. Y. 86.

Judgment accordingly.