LOUISA KRAEMER, Respondent, *v.* SAMUEL ADELSBERGER et al.,
        Appellants.

While, where it appears that an instrument offered to establish a defeasance
was entered into subsequently to a deed and not in pursuance of the
original agreement made at or before its execution and delivery, it may
not be read with the deed for the purpose of establishing the latter as a
mortgage, where the two instruments were executed in pursuance of
the original agreement and so constitute a part of the same transaction,
they may be so read together; and this, although they were not reduced
to writing at the same time and do not bear even date.

The fact that the deed was recorded before the date of the agreement of
defeasance, while it raises the presumption that it was delivered at or
before the date of the record, is not conclusive, and it may be shown
that it was not in fact delivered until a later period.

A deed absolute in terms, but given simply as security for the payment of
a debt, is a mortgage with all the incidents of that instrument.

The absence of an express agreement to pay the debt is not conclusive as
to the nature of the contract, but is simply a circumstance to be consid-
ered in construing it.

So also the fact that the deed contains a covenant on the part of the grantee
assuming the payment of a prior mortgage is not conclusive, but simply
a circumstance to be considered in determining the purpose of the parties.

C., a member of the firm of C. & Co., a limited partnership, held the title
to certain real estate in his own name, but as partnership property, and
for the benefit of the firm. The firm was dissolved by the withdrawal
of H. the special partner, at which time the firm was indebted to him in
the sum of $60,000. C. executed to H. a deed of said premises, absolute
on its face, dated March 21, 1871, and recorded the next day. An instru-
ment was executed by all the members of the firm dated April 1, 1871,
which recited the indebtedness of the firm to H. and that the latter
"receives and takes" from C. said deed, and also deeds of other real
estate held by C. and conveyed in the same manner, as security for the
payment of $30,000 of such indebtedness, the property to be held by H.
as trustee only for said firm; for the balance of the indebtedness H.
received the firm notes. The instrument stated the understanding to be
that whatever H. realized from a sale of the real estate so conveyed, over
and above the $30,000, he should pay over to his copartners, they agree-
ing, if that sum was not realized, to pay the balance, the sale to be made
within two years. The firm was to retain possession of the premises,
collect and receive rents, pay taxes and interest on mortgage thereon,
and pay over the net proceeds to H., to be applied on the indebtedness
secured. The lands were not to be sold by H. without the consent of

C. & Co. for a less sum than the consideration expressed in the several deeds, and in case he made such a sale, it was provided that he should be charged with the difference. After the death of H. his executor transferred his interests in the deed and defeasance, treating them as a mortgage, to D., who brought an action to foreclose them. D. became the purchaser under the judgment in said action; he received the referee's deed, and subsequently conveyed to defendants the premises in question. Plaintiff contracted to purchase said premises, but refused to accept a conveyance on the ground of defect of title, he claiming that upon the death of H. the title vested and still remains in his heirs, and that they not having been made parties to the foreclosure, were not affected by the foreclosure. In an action brought to recover back the sum paid by plaintiff upon the execution of the contract of sale and expenses, the referee found that the defeasance was executed "on or about the date of the delivery" of the deed. *Held,* it was to be assumed that the defeasance was cotemporaneous with the delivery and acceptance of the deed, and that the latter never took effect until the former was executed; and so, that notwithstanding the difference in dates, the two instruments were to be taken and read together, and as thus read they constituted a mortgage, and upon foreclosure the heirs of H. were not necessary parties; and, therefore, plaintiff's title was good and the action not maintainable.

*Macaulay* v. *Porter* (71 N. Y. 173); *Randall* v. *Sanders* (87 id. 578), distinguished.

*Kraemer* v. *Adelsberger* (23 J. & S. 246), reversed.

(Argued October 17, 1890; decided December 2, 1890.)

APPEAL from order of the General Term of the Superior Court of the city of New York, made January 3, 1888, which reversed a judgment in favor of the defendants entered upon the report of a referee and directed a new trial.

This action was brought to recover $500 paid by plaintiff to defendants upon a contract for the sale of the real estate known as No. 316 East Fifty-second street, New York city, together with expenses for examining the title.

Both parties professed to be ready to perform the contract, but the plaintiff made certain objections to the title, and thereupon refused to accept the deed which was tendered to her, or to pay the balance of the purchase-price.

The title to the property in question was conveyed to William S. Carr in 1869, who was at that time a member of the firm of William S. Carr & Co., and he held it as partner-

ship property for the benefit of himself and his partners. The firm was composed of William S. Carr and Theodore Susemihl as general partners, and Andrew Henderson as special partner. This firm was dissolved about January 1, 1871, by the withdrawal of Mr. Henderson, the special partner, and at that time the general partners were indebted to him in the sum of $60,000.

A deed of conveyance of said premises and of other property, dated March 21, 1871, from William S. Carr to Andrew Henderson, which was absolute upon its face, was recorded as a conveyance on March 22, 1871. The object intended to be accomplished by this conveyance appears to have been set forth in a paper executed by all of the members of the late firm as of the date of April 1, 1871. It is as follows:

"WHEREAS, Andrew Henderson, formerly a special partner in our firm, W. S. Carr & Co., is desirous of withdrawing the amount due him, we have mutually agreed and come to the following understanding: Andrew Henderson *receives and takes* from Wm. S. Carr, trustee for the firm, the deeds of the following property: House and lot in One Hundred and Thirty-second street, between Fifth and Madison avenues, subject to a mortgage for six thousand dollars, valued at fifteen thousand dollars. House and lot in Forest avenue, Eltona, Westchester county, N. Y., subject to a mortgage of twenty-five hundred dollars, valued at twelve thousand dollars. House and lot No. 152 East One Hundred and Fifteenth street, subject to a mortgage of five thousand dollars, valued at ten thousand dollars. *House and lot No.* 316 *East Fifty-second street, subject to a mortgage of six thousand dollars, valued at fourteen thousand dollars, as security for the sum of* thirty thousand dollars, with the understanding that whatever above that sum is realized by the sale belongs to Wm. S. Carr & Co., and Andrew Henderson agrees to pay the difference to them whenever received, and Wm. S Carr and Th. Susemihl, comprising the firm of Wm. S. Carr & Co., agree to make good and pay over any difference to Andrew Henderson, if that amount should not be realized. The sale to be effected inside of two years. Andrew Henderson has appointed Mr. George P. Labutat as his repre-

sentative to receive the money for this real estate when sold. Andrew Henderson gives to Wm. S. Carr & Co. the right to rent and collect the rent for these houses and lots the same as they have done heretofore before the deeds were made over to him, and in return Wm. S. Carr & Co. agree to see that the taxes and assessments, as well as the interest on the first mortgages, are paid. It is further mutually understood that this property being only held by Andrew Henderson as trustee for the sum of thirty thousand dollars as before mentioned, Andrew Henderson agrees to not dispose of any of this property for less amount than the deeds made over to him call for without getting the consent of Wm. S. Carr & Co., or else forfeit his claim on Wm. S. Carr & Co. in case he should not realize the amount of thirty thousand dollars, for which it is pledged. Wm. S. Carr & Co. give, and Andrew Henderson receives, their notes for thirty thousand dollars, payable twelve, eighteen and twenty-four months from March 15th, 1871, this being the balance of his claim on the firm. Wm. S. Carr & Co. agree further to pay over quarterly, that is June 15th, Sept. 15th, Dec. 15th and March 15th, to Mr. Aiken, as Andrew Henderson's banker, the interest at the rate of seven per cent per annum, due on above sixty thousand dollars, or after any of it has been paid, either of the notes or by disposing some of the real estate on the balance remaining."

"In witness whereof, we have put this first day of April, 1871, our hands and seal."

Wm. S. Carr & Co. continued in possession of the real estate, and year after year collected the rent, and out of it paid the taxes and interest on the first mortgages, and paid over the balance during Henderson's life-time to his agent, and afterwards to his executor. Henderson died in 1873, leaving a last will and testament, by which his brother Matthew Henderson was appointed executor, and letters testamentary were issued to him. William S. Carr died in September, 1880, leaving a will, by which he devised and bequeathed his personal property to his wife and to his two children. In December, 1881, Matthew Henderson, as executor of Andrew

Henderson, assigned and transferred to Edward C. Delavan the interest of said testator in said deed and defeasance treating the same as a mortgage. Thereafter, in August, 1882, an action was commenced by Delavan to foreclose said instrument as a mortgage. The defendants named in that action were the widow and devisees of William S. Carr, deceased, and Theodore Susemihl, the surviving partner of Wm. S. Carr & Co., who had an interest in the equity of redemption as such surviving partner. This action went to judgment, the referee being appointed to make the sale. Such sale was had, and Edward C. Delavan became the purchaser and received a deed from the referee. Pending that action the deed to Henderson and the defeasance were recorded among mortgages, and the defeasance was also recorded among the conveyances.

The defendants in this action purchased from Edward C. Delavan and received a deed from him.

Further facts appear in the opinion.

*Abner C. Thomas* for appellant. The deed of conveyance from William S. Carr to Andrew Henderson, and the instrument of defeasance executed by Henderson, Carr and Susemihl, must be read together. (*Dey* v. *Dunham*, 2 Johns. Ch. 181, 182; *Tarbell* v. *West*, 86 N. Y. 280; *Hiscock* v. *Phelps*, 49 id. 97; *Knolles* v. *Barnhart*, 71 id. 474; *Best* v. *Brown*, 25 Hun, 223; *Munson* v. *Dyett*, 56 How. Pr. 333; *Jackson* v. *Perkins*, 2 Wend. 308.) The conveyance and defeasance, when read together, constitute a mortgage. (Jones on Mort. § 16; 2 Washb. on Real Prop. 43; *Carr* v. *Carr*, 52 N. Y. 251; *Horn* v. *Keteltas*, 46 id. 605; *Morris* v. *Budlong*, 78 id. 543; 1 R. S. 738, § 139; *Gaylord* v. *Knapp*, 15 Hun, 87; *Hone* v. *Fisher*, 2 Barb. Ch. 559; *Odell* v. *Montross*, 68 N. Y. 499; *Macauley* v. *Porter*, 71 id. 173; *Randall* v. *Sanders*, 23 Hun, 611; 87 N. Y. 578; *Baker* v. *Thrasher*, 4 Den. 493; *Garnsey* v. *Rogers*, 47 N. Y. 235; *Pardee* v. *Treat*, 82 id. 385; Jones on Mort. §§ 62, 1769, 1770; *Lawrence* v. *F. L. & T. Co.*, 13 N. Y. 200; *Jackson* v. *Richards*, 6 Cow. 617;

*Morrison* v. *Brand*, 5 Daly, 40 ; *James* v. *Johnson*, 6 Johns. Ch. 417 ; *Jackson* v. *Burgot*, 10 Johns. 457 ; *Jackson* v. *Phillips*, 9 Cow. 94 ; *Jackson* v. *West*, 10 Johns. 466.) If the instrument of defeasance did not, when taken with the conveyance, constitute a valid mortgage, it was, at least, a valid declaration of trust. (1 R. S. 728, 730, §§ 55, 68 ; 2 id. 134, § 6 ; Laws of 1860, chap. 321 ; *Cook* v. *Barr*, 44 N. Y. 156 ; *McArthur* v. *Gordon*, 51 Hun, 511 ; *Berrien* v. *McLane*, Hoff. Ch. 421 ; *Jackson* v. *Delancey*, 13 Johns. 537 ; *Wood* v. *Mather*, 38 Barb. 473.) The heirs of Andrew Henderson were not necessary or proper parties to the action to foreclose. (*Moore* v. *Burrows*, 34 Barb. 173 ; *Hill* v. *Ressegieu*, 17 id. 162 ; *Swartwout* v. *Burr*, 1 id. 495 ; Story's Eq. Jur. §§ 788, 789, 790.) The wife of Theodore Susemihl was not a necessary party to the foreclosure. (1 R. S. 740, § 1 ; *Van Brunt* v. *Applegate*, 44 N. Y. 544 ; *Greenwood* v. *Marven*, 111 id. 423, 436 ; *Huston* v. *Neil*, 41 Ind. 504.) The objections to the admission of evidence were not well taken. (*Sheridan* v. *Andrews*, 49 N. Y. 481 ; *Peterson* v. *C. Bank*, 32 id. 21 ; *Smith* v. *Tiffany*, 16 Hun, 552 ; *Middlebrook* v. *M. N. Bank*, 3 Abb. Ct. App. Dec. 295 ; *Johnson* v. *Wallis*, 112 N. Y. 230, 233 ; *Langdon* v. *Buell*, 9 Wend. 80.)

*E. J. Spink* for respondent. The conveyance of March 21, 1871, and the agreement of April 1, 1871, do not together constitute a mortgage. (2 R. S. chap. 3, § 3 ; *Gillig* v. *Maas*, 28 N. Y. 191–215 ; *White* v. *Moore*, 1 Paige, 551 ; *Morris* v. *Budlong*, 78 N. Y. 553 ; 1 Jones on Mort. §§ 258–263 ; *Horn* v. *Keteltas*, 46 N. Y. 610 ; 4 Kent's Comm. [11th ed.] 142, 143 ; Boone on Mort. § 39 ; *Macauley* v. *Porter*, 71 N. Y. 173 ; *Randall* v. *Saunders*, 23 Hun, 611–614 ; *Baker* v. *Thrasher*, 4 Den. 493 ; *Robinson* v. *Cropsey*, 2 Edw. Ch. 138 ; *Dey* v. *Dunham*, 2 Johns. Ch. 189 ; *Stephenson* v. *Hayward*, Finch's Pr. Ch. 310 ; *Hasbrook* v. *Paddock*, 1 Barb. 635 ; *Burch* v. *Newberry*, Id. 648 ; Story's Eq. Jur. § 64.) As no conveyance by Andrew Henderson or his heirs is shown, the legal title presumptively remains in them ; and as they were

not parties to the pretended foreclosure proceedings, they are not concluded by them and are at liberty at any time to assert their title as it appears of record. (*Shriver* v. *Shriver*, 86 N. Y. 575; *Lockwood* v. *Reilly*, 29 Hun, 434; *Fleming* v. *Burnham*, 100 N. Y. 1; *M. E. C. Home* v. *Thompson*, 108 id. 618; *Moore* v. *Williams*, 115 id. 586; *Irving* v. *Campbell*, 31 N. Y. S. R. 307; *Vought* v. *Williams*, 120 N. Y. 253.) The title not being clear, so that plaintiff would be bound to accept it, he may recover back the money paid. (*Hayes* v. *Nourse*, 8 N. Y. S. R. 397; 114 N. Y. 595; *Bruner* v. *Meigs*, 64 id. 506, 515; *M. E. C. Home* v. *Thompson*, 108 id. 618; *Moore* v. *Williams*, 115 id. 586.)

PARKER, J.   The plaintiff contends that the title obtained by the purchaser at the foreclosure sale was defective because the heirs of Andrew Henderson were not made parties to the action.   She insists that the deed from Wm. S. Carr to Andrew Henderson was not a mortgage but an absolute deed.   That upon his death the title became vested in his heirs at law and still remains in them, for, not having been made parties to the foreclosure, they are not affected by the judgment.

The plaintiff's first proposition is that the deed, being absolute upon its face, imposed upon the defendant the burden of showing that at the time of its making and delivery there was an agreement that it should not be treated as an absolute sale, but merely as security for the sum of $30,000, and was in legal effect a mortgage.   And this the plaintiff insists was not proven, because no attempt was made to show that there was an oral agreement cotemporaneous with the execution of the deed, which constituted it a mortgage.   While the writing upon which the defendants base their reliance, she urges, cannot have that effect, because it does not bear the same date as the deed and, therefore, they cannot be read together.   We think that, notwithstanding the difference in dates, the facts proven require them to be so read.   The deed bears date March 21, 1871, and was recorded on the day following, while the defeasance is dated April first, of the same year.   Now, while

it is true that if an instrument offered to establish a defeasance be entered into subsequently to a deed and not in pursuance of the original agreement made at or before the execution and delivery, it cannot be read with the deed, still it is not essential that they should have been reduced to writing at the same time, or bear even date. (*Harrison* v. *Trustees, etc.*, 12 Mass. 456; *Lund* v. *Lund*, 1 N. H. 39; 2 Washb. R. P. [5th ed.] 56.) It is sufficient if they constitute a part of the same transaction. And while the recording of the deed ten days before the date which the agreement of defeasance bears raised the presumption that it had been delivered at or before the time that it was put on record, it was not conclusive and could have been overborne by evidence that it had not then been delivered and was not until a later period. With reference to that question the referee found as a matter of fact "that on or about the date of the delivery" of the deed, Henderson, Carr and Susemihl executed the defeasance which was thereafter recorded. No exception was taken to this finding, and as it is controlling here we need not consider the force and effect of the recitals and stipulations contained in the defeasance, but may assume that it was cotemporaneous with the delivery and acceptance of the conveyance, and that the conveyance never took effect until the defeasance was executed.

The plaintiff's second position is that if the deed and agreement be read together they do not constitute a mortgage; that in legal effect the transaction was not a conveyance of lands as security for the loan or forbearance of money, but in payment of a debt. We think otherwise. It will be observed from a reading of the agreement, (1) that an indebtedness by the firm to Henderson of $60,000 existed; (2) that payment was to be assured by Henderson's receiving the notes of Wm. S. Carr & Co. (then solvent), for $30,000 and the conveyance of land as security for the remaining $30,000. The provision as to the condition upon which Henderson accepted the conveyance being stated as follows: "Henderson receives and takes from Wm. S. Carr, trustee for the firm, the deeds * * * as security for the sum of $30,000." (3) Neither the notes nor the deeds were to

be accepted in payment because (*a*) the firm were to continue: to pay Henderson interest on the full sum of $60,000 after the execution and delivery of the notes and the deeds until some: portion of the notes were paid or a sale of a part of the land should reduce the amount secured by the conveyance, and then upon the remainder unpaid. (*b*) The firm were to retain possession of the premises, collect and receive the rents, pay all taxes and interest on firm mortgages, and pay over the net proceeds to Henderson, to be applied in payment of the principal and interest of the indebtedness secured by the conveyance. (*c*) The land was not to be exchanged for other property or retained for the benefit of the grantee and his heirs at his option, but was to be sold within two years. (*d*) Henderson was not to sell for a less sum than that mentioned in the several deeds without getting the consent of Wm. S. Carr & Co. If he should, it was provided that he should be charged with the consideration expressed. (*e*) It was provided that when the lands should all be sold, that the moneys remaining after the payment of the $30,000 and interest should be paid over to Wm.. S. Carr & Co. (*f*) And that if the sales of some of the different parcels should be made at a less sum than the consideration expressed, but with the consent of Wm. S. Carr & Co., then the firm should pay to Henderson whatever sum was required to make good to him the $30,000 and interest.

We think we need not further analyze the agreement, for it is apparent from the portions so far considered, that it was not the intent of the parties that Henderson should become the. purchaser of these lands for the sum of $30,000, and that to such extent the firm indebtedness to him should be paid, but. that it was the purpose of the conveyance, as manifested by the agreement, to secure Henderson to the extent of $30,000. The indebtedness remaining after the transaction as before, and continuing in the full sum of $60,000 until, by the application of rents and sale of parcels of land or the payment of moneys by the firm, it should be reduced.

Whether a conveyance be absolute or as a security must generally be determined by the intention of the parties as dis-

closed by the contract. ( *James* v. *Morey*, 2 Cow. 246.) And a deed absolute in terms, but given simply as security for the payment of money, is a mortgage with all the incidents of that instrument. (*Odell* v. *Montross*, 68 N. Y. 499.)

In determining whether a contract is to be treated as a mortgage, or a conditional sale, or a conveyance in fee, courts have commented upon the presence or absence of various particulars which commonly accompany mortgages, but the essential feature necessary to create a mortgage is that it should be a conveyance intended as a security. Such evidently was the purpose of the contract before us, but the plaintiff calls attention to the absence of a covenant to pay the amount of the indebtedness. It was agreed that interest should be paid on the full amount; that after sales should be made, the proceeds should be applied in reduction of the amount of the then existing obligation, and that the firm would pay the difference if any should remain. So that, while there was not an agreement in terms to pay the entire indebtedness, such may be said to have been the purpose and effect of the agreement; but in any event the absence of such a covenant is not conclusive, but is a circumstance to be considered in construing the contract. (*Horn* v. *Keteltas*, 46 N. Y. 605; *Morris* v. *Budlong*, 78 id. 543, 552.)

The fact that the deed contained a covenant assuming the payment of a prior mortgage is also a circumstance entitled to consideration in determining what was the purpose of the parties in making the contract, but it is not controlling.

Having given that, as well as all other provisions of the contract, due consideration, we agree with the finding of the referee " that it was the intention of the two instruments    *    *    * that the instrument and conveyance    *    *    * should be a security to said Henderson for the payment of the indebtedness of said Carr and Susemihl to said Henderson." *Macaulay* v. *Porter* (71 N. Y. 173) and *Randall* v. *Sanders* (87 id. 578) do not support the plaintiff's contention. In *Macauley's* case the action was brought to have a deed recorded as a conveyance declared a mortgage. The trial court held that the instrument was not a mortgage, but a deed, and in affirming

the judgment this court said : " It is difficult to see how the court could have arrived at any other conclusion ; the agreement was not a defeasance which was to render the deed void on the payment of any sum of money, nor was there anything in the transaction of the nature of a mortgage. Porter was not a creditor taking the land to secure any debt. No debt existed or was created in respect to the $2,500 paid for the property. If the land had depreciated, Porter would have had no claim for reimbursement, nor was the privilege reserved to redeem it on payment of any sum. These circumstances are of great importance in determining the character of the transaction."

*Randall's* case was an action of trespass. A deed had been delivered for a present cash consideration duly paid, and the grantee gave to the grantor an agreement to repurchase within three years. The action was an attempt to resume possession of the property without complying with the terms of the agreement. RAPALLO, J., in delivering the opinion of the court, said : "After a careful consideration of these instruments, we are of the opinion that the relations of debtor and creditor, formerly existing between the parties, were terminated by the conveyance of December 5. That the conveyance was given and received in satisfaction of the prior indebtedness, and was not intended as security merely, but as an absolute conveyance, and the agreement of December 6th was not intended as a defeasance, but a contract to resell."

As we have reached the conclusion that the deed and agreement together constitute a mortgage, it follows that it was a personal asset which passed to the executor for the purposes of administration and upon a foreclosure thereof by the executor or his assignee, the heirs of Henderson were not necessary parties.

The plaintiff's objections to the title were not, therefore, well taken, and the trial court rightly dismissed the complaint.

The order should be reversed, and the judgment entered on the report of the referee affirmed, with costs.

All concur.

Order reversed and judgment affirmed.