UNITED STATES of America, Plaintiff,

v.

The PREMISES AND REAL PROPERTY WITH BUILDINGS, APPURTE-NANCES AND IMPROVEMENTS AT 500 DELAWARE STREET, TONAWAN-DA, NEW YORK, that is, All That Tract or Parcel of Land, Situate in the City of Tonawanda, County of Erie and State of New York, and More Particularly Described in a Certain Deed Recorded in the Erie County Clerk's Office in Liber 9791 of Deeds at Page 211, Defendant.

No. 90–CV–898C.

United States District Court,
W.D. New York.

Nov. 28, 1994.

Patrick H. NeMoyer, U.S. Atty. (Anne Vangraafeiland, Asst. U.S. Atty., of counsel), Rochester, NY, for plaintiff.

Brown & Kelly (Philip B. Abramowitz, of counsel), Buffalo, NY, for defendant.

CURTIN, District Judge.

This is a civil *in rem* forfeiture action brought by the United States pursuant to 21 U.S.C. § 881, against premises and real property located at 500 Delaware Street, Tonawanda, New York. Edward Isenberg, the

holder of legal title to the property at the time of commencement of the action, is contesting the forfeiture, as a person claiming an ownership interest in the property. Robert and Josephine Kudletz have filed a claim as innocent mortgage holders. The government has moved for summary judgment against Mr. Isenberg, arguing principally that he has no bona fide ownership interest in the property and therefore no standing to contest the forfeiture. Mr. Isenberg opposes the motion, insisting that he does indeed possess a bona fide ownership interest. He argues further that the government cannot establish probable cause for forfeiture, because its evidence was obtained in violation of the Fourth Amendment and is therefore inadmissible in the forfeiture proceeding. This court has jurisdiction pursuant to 28 U.S.C. §§ 1345, 1355 and 1395.

### BACKGROUND

500 Delaware Street, Tonawanda, New York, is a residential property on which there is a small apartment building. Edward Isenberg and his wife, Beth, purchased the property from Robert and Josephine Kudletz on March 15, 1982. The Kudletzes retained a $20,000.00, 20–year mortgage on the property, with Edward and Beth Isenberg named as mortgagors.

Edward and Beth Isenberg acquired 500 Delaware Street with the intention that their eldest son, Martin, would live in one of the apartments and manage the property. They made an oral agreement with Martin under which he would receive a ten percent equity interest in the property each year he managed it. He duly took up residence, and assumed his responsibilities as manager.

Some time in 1984–85, Edward and Beth Isenberg separated. About a year later, on January 1, 1986, Edward executed a warranty deed transferring his one-half interest in 500 Delaware Street to Martin, for the sum of one dollar. The deed was recorded on January 27, 1986. Subsequently, on October 5, 1987 Beth Lawton, formerly Beth Isenberg, transferred her one-half interest in the property to Martin for one dollar, the deed being recorded on November 12, 1987. Both deeds state that "THIS CONVEYANCE is a *gift* of a one-half interest ..." (emphasis added), and that the conveyance was made and accepted subject to the mortgage held by Robert and Josephine Kudletz. Item 20, Exs. 3 and 4. The mortgage was not, however, assigned to Martin, and it remained in the names of Edward and Beth Isenberg.

At deposition on July 6, 1992, Edward Isenberg was asked why he transferred his interest in 500 Delaware Street to Martin in 1986. He responded that "[w]e were separated and he was managing it, taking care of it, and I just felt that he should have it. I felt he was doing a good job and why wait, 10 percent a year—we were already separated and had no income from it or anything like that, so I figured, let him have it." Item 20, Ex. 2, pp. 24–25. When asked whether, to the best of his understanding, he retained any ownership interest in the property at that time, he answered "no." *Id.* at 26. Similarly, when asked whether Martin could sell the property if he wanted to, he answered, "[y]es, yes, it was his." *Id.* In an affidavit dated May 23, 1993, however, Mr. Isenberg claimed that "[m]y belief at that time was that ... the title might as well be placed in his name at that time rather than in ten years," but that "[a]lthough title was then in Martin's name, the mortgage remained in my name. It was understood that Marin [sic] would continue to live in and manage the property as before. I could reclaim it if Martin did not fulfill his obligation to manage the property responsibly." Item 24, ¶¶ 7–8.

In January 1990, David Bentley, a detective with the City of Tonawanda, New York, Police Department, received information from a confidential informant that Martin Isenberg was growing marijuana at 500 Delaware Street. The informant told Bentley that Martin lived in the second floor apartment, that he had been cultivating marijuana plants in the attic of the building for about three years, that he had an elaborate set-up for growing the plants, and that he had been selling the harvested marijuana for approximately $150.00 per ounce.

On January 25, 1990, Bentley appeared with his informant before Tonawanda City Court Judge Richard Kinzly, to make application for a warrant authorizing a search of

part of the premises at 500 Delaware Street. Based upon Bentley's written application and the informant's testimony, Judge Kinzly found probable cause to believe that marijuana was being cultivated in felony quantities in the attic of 500 Delaware Street, and that marijuana, its derivatives, plants, and paraphernalia were present both in the upper apartment on the southeast corner of the house and in the attic. He issued a warrant setting forth his findings, and authorizing the search of "[a] multiple dwelling, located at 500 Delaware Street, Tonawanda, NY 14150 (Erie County) To [sic] search the apartment on the second floor, first door on left at top of steps, the apartment of Martin Isenberg and wife . . ." Item 19, Ex. A. It is notable that although the section of the warrant authorizing the search described the location of the entrance to Martin Isenberg's apartment with specificity, it made no mention of the attic. The door to the attic was on the second floor of the building, near the entrance to, but outside, the Isenberg apartment.

On January 26, 1990, Bentley and several other police officers, armed with the warrant issued by Judge Kinzly, conducted a search of Martin Isenberg's apartment. Over Martin's strenuous objections they also searched the attic, the door to which had been double-locked. They found evidence of marijuana cultivation, and seized 27 marijuana plants, with a combined weight of 5.2 pounds, as well as growing equipment, grow lights, control panels, drying trays and fertilizer. During the course of the search, Martin allegedly said to Bentley, "[m]y wife has no part in this. I was growing the pot, and she never touched it." Item 19, ¶ 8. He was then arrested, and charged with criminal possession of marijuana, obstructing governmental administration, and cultivating marijuana without a license.

Shortly after his arrest, on April 9, 1990, Martin Isenberg executed a warranty deed transferring title to 500 Delaware Street to his father, Edward Isenberg, for the sum of one dollar. The deed was recorded on May 31, 1990. At deposition on July 6, 1992, Edward Isenberg stated that he took the property back from Martin "knowing that the property was in jeopardy, because of the trouble [Martin] got into." Item 20, Ex. 2, p. 7. He admitted that by "in jeopardy" he meant that the property could be taken from Martin by the government. He also admitted knowing, at the time of the transfer, that the "trouble" that Martin had got into was growing marijuana. In his affidavit of May 23, 1993, Edward stated that "[w]hen Martin was arrested for allegedly growing marijuana on the premises, I took the title to the property back from him in order to protect my investment in it." Item 24, ¶ 8.

Although Edward Isenberg regained title to 500 Delaware Street in April, 1990, Martin continued to occupy the second floor apartment and manage the property. At deposition on July 6, 1992, Edward admitted that nothing changed in his involvement with the property after the transfer of title in April 1990; that he received no income from the property; that Martin received all rent payments from the tenants, and was fully responsible for leasing the apartments when vacancies occurred; that he (Edward) did not know who the current tenants were; that Martin was responsible for making all mortgage, property tax, and insurance payments, for paying the utility bills, and for maintaining the property and making repairs. In his affidavit of May 25, 1993, however, Edward asserted that he has a bona fide ownership interest in the property since title to the property is in his name, he continues to be obligated under the mortgage, he is free to dispose of the property as he sees fit, and Martin lives at and manages the property only on his sufferance.

On July 6, 1990, Martin Isenberg was indicted by an Erie County Grand Jury on charges of criminal possession of marijuana in the second degree, in violation of New York Penal Law § 221.25, and growing marijuana plants without a license, in violation of New York Public Health Law § 3382. On July 8, 1991, following the denial of his motion to suppress the evidence obtained in the search of 500 Delaware Street, he pled guilty to both charges. On December 30, 1992, the New York State Supreme Court, Appellate Division, Fourth Department, unanimously overturned his conviction. The court found

that at the time Judge Kinzly issued the warrant authorizing the search of 500 Delaware Street, there was not "substantial compliance" with New York Criminal Procedure Law § 690.40(1). *People v. Isenberg,* 188 A.D.2d 1042, 592 N.Y.S.2d 1006 (4th Dept. 1992).[1] The evidence discovered during the search therefore had to be suppressed. *Id.* (citing *People v. Taylor,* 73 N.Y.2d 683, 690, 543 N.Y.S.2d 357, 360, 541 N.E.2d 386, 389 (1989)).

The United States commenced the instant action on August 27, 1990, shortly after Martin Isenberg had been indicted. Edward Isenberg filed a claim on October 9, 1990, asserting an interest as owner of the property. Although copies of the summons, complaint, and warrant of arrest of property *in rem* were served upon Martin Isenberg, Martin has filed no claim.

The government has moved for summary judgment against Edward Isenberg. It contends that there is probable cause for forfeiture because 500 Delaware Street played an essential role in the marijuana-growing operation allegedly conducted by Martin Isenberg. Edward Isenberg cannot contest the forfeiture, it argues, because he is no more than a straw owner who took title to the property for the sole purpose of circumventing the forfeiture laws. In reply, Mr. Isenberg maintains (i) that he has standing to contest the forfeiture by virtue of his "substantial ownership interest," (ii) that the government cannot establish probable cause for forfeiture, because the only evidence that the property played a role in Martin's alleged marijuana-growing operation was obtained in violation of the Fourth Amendment, and such evidence is not admissible in a civil forfeiture proceeding, and (iii) summary judgment is precluded because he has introduced evidence sufficient to raise a genuine issue of fact as to whether or not he is an "innocent owner" of the property. The government

responds that Edward Isenberg has no standing to challenge the search of 500 Delaware Street, since he had no legitimate expectation of privacy in the areas searched on January 26, 1990. It maintains that the evidence was lawfully seized pursuant to the warrant issued by Judge Kinzly. And it argues that Mr. Isenberg cannot establish an interest as an "innocent owner," or indeed any legitimate ownership interest, in the property.

## DISCUSSION

Under 21 U.S.C. § 881(a), property subject to forfeiture to the United States includes:

> [a]ll real property, including any right, title, and interest ... in the whole of any lot or tract of land ..., which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment....

21 U.S.C. § 881(a)(7). However, the statute provides for a significant exception for "innocent owners:"

> [N]o property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

*Id.* Generally, in a civil forfeiture action under § 881, the government bears the initial burden of establishing probable cause that the property is subject to forfeiture. *United States v. 19 and 25 Castle Street,* 31 F.3d 35, 39 (2d Cir.1994); *United States v. Daccarett,* 6 F.3d 37, 55 (2d Cir.1993), *cert. denied,* —— U.S. ——, ——, ——, 114 S.Ct. 1294, 1295, 1538, 127 L.Ed.2d 648, 128 L.Ed.2d 190 (1994). Once the government has estab-

1. New York Criminal Procedure Law § 690.40(1) provides that "[i]n determining an application for a search warrant the court may examine, under oath, any person whom it believes may possess pertinent information. Any such examination must be either recorded or summarized on the record by the court." In Martin Isenberg's case, the Appellate Division found that

"[t]he sketchy details provided in the handwritten statement signed by the confidential informant did not constitute a summary of the informant's examination by the issuing Magistrate 'recorded or summarized on the record by the court.'" *People v. Isenberg,* 188 A.D.2d 1042, 592 N.Y.S.2d 1006.

lished probable cause, the burden of proof shifts to an owner opposing forfeiture to demonstrate "by a preponderance of the evidence that either (1) the property was not used for an illegal purpose; or (2) the illegal use of the property was without his knowledge or consent." *19 and 25 Castle Street,* 31 F.3d at 39.

■ As a threshold matter, a claimant must establish that he has a sufficient interest in the property to give him Article III standing to contest the forfeiture. *United States v. 4492 South Livonia Road,* 889 F.2d 1258, 1262 (2d Cir.1989). The burden of proof in this regard lies with the claimant. *Mercado v. United States Customs Service,* 873 F.2d 641, 644 (2d Cir.1989). The standing inquiry is "informed by 'whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Torres v. $36,256.80 U.S. Currency,* 25 F.3d 1154, 1157 (2d Cir.1994) (quoting *Association of Data Processing Serv. Orgs., Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970)). The Second Circuit has recognized that Congress intended that the "innocent owner" provisions of 21 U.S.C. § 881 to "'be broadly interpreted to include any person with a recognizable legal or equitable interest in the property seized.'" *Id.* (quoting *Joint Explanatory Statement of Titles II and III,* 95th Cong., 2d Sess. (1978), *reprinted in* 1978 U.S.C.C.A.N. 9518, 9522). The statute may be interpreted as providing standing to any person able to demonstrate a legitimate interest in the property at the time the forfeiture proceedings are instituted.[2]

■ Generally, "an allegation of ownership and some evidence of ownership are together sufficient to establish standing to contest a civil forfeiture." *Torres,* 25 F.3d at 1158. However, "'[p]ossession of mere legal title by one who does not exercise dominion and control over the property is insufficient ... to establish standing.'" *United States v. One Parcel of Land,* 902 F.2d 1443, 1444 (9th Cir.1990) (quoting *United States v. 900 Rio Vista Blvd.,* 803 F.2d 625, 630 (11th Cir. 1986)). *See, also, United States v. Vacant Land,* 15 F.3d 128, 130 (9th Cir.1994); *United States v. 526 Liscum Drive,* 866 F.2d 213, 217 (6th Cir.1989). The rationale for this rule is that people engaged in illegal activities often attempt to disguise their interests in property by placing title in others people's names, *900 Rio Vista Blvd.,* 803 F.2d at 630, "either to conceal illegal dealings or to avoid forfeiture." *United States v. One 1982 Porsche 928,* 732 F.Supp. 447, 451 (S.D.N.Y. 1990). If the government makes out a prima facie case that a claimant is merely a nominal or straw owner, the burden then shifts to the claimant to come forward with some evidence that he has exercised dominion and control over the property, beyond the mere holding of legal title. *United States v. 717 South Woodard Street,* 804 F.Supp. 716, 723 (E.D.Pa.1992), *aff'd in part, rev'd in part, United States v. 717 South Woodward [sic] Street,* 2 F.3d 529 (3d Cir.1993) (citing *United States v. Contents of Accounts Nos. 3034504504 and 144–07143 at Merrill, Lynch, Pierce, Fenner and Smith, Inc.,* 971 F.2d 974, 986 (3d Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1993)).

---

**2.** The statute establishes that "[a]ll right, title, and interest in property [subject to forfeiture under 21 U.S.C. § 881] shall vest in the United States upon commission of the act giving rise to forfeiture under this section." 21 U.S.C. § 881(h). This provision does not, however, serve to divest an owner of all claim to the property, and therefore of standing to challenge the forfeiture, upon the commission of the illegal act. Transfer of ownership to the government does not occur until there is a final judgment of forfeiture. *Counihan v. Allstate Insurance Company,* 25 F.3d 109, 112–13 (2d Cir.1994) (citing *United States v. 92 Buena Vista Ave.,* — U.S. ——, ——, 113 S.Ct. 1126, 1137, 122 L.Ed.2d 469 (1993)). At that time, *retroactive* vesting of title in the United States takes place, judgment of forfeiture relating back to the time of the illegal act. *United States v. Daccarett,* 6 F.3d at 53 (citing *United States v. 92 Buena Vista Ave.,* — U.S. at ——, 113 S.Ct. at 1138 (Scalia, J., concurring)). The statute may therefore be understood as providing those legitimately holding title, or possessing some other recognizable legal or equitable interest, *at the time the forfeiture proceedings are instituted,* with standing to challenge the forfeiture. *See, United States v. One Parcel of Land in the Name of Mikell,* 33 F.3d 11, 12–13 (5th Cir.1994).

■ In the instant case, the government has made out a strong prima facie case that Edward Isenberg is nothing more than a straw owner of 500 Delaware Street. Mr. Isenberg conveyed his one-half interest in the property to his son, Martin, in January 1986. The deed states plainly that the transfer was "a gift of a one-half interest." Mr. Isenberg's July 6, 1992, deposition testimony makes it clear that he intended that Martin "should have" the property, and that he understood that after the transfer he retained no ownership interest. When he accepted title back from Martin in April 1990, he knew that the property could be forfeited as a result of Martin's alleged cultivation of marijuana. Indeed, he admitted that the transfer was made with the specific and sole purpose of protecting the property from forfeiture.

In his affidavit of May 23, 1993, Mr. Isenberg asserted that although he transferred title to his one-half interest in 500 Delaware Street to Martin in January 1986, he retained the right, under an oral agreement with Martin, to reclaim the property if Martin did not manage the property responsibly. The assertion is in direct contradiction to his deposition testimony, and is unsupported by any other evidence. In view of the plain language of the deed establishing that the transfer was a gift of Mr. Isenberg's one-half interest to Martin, I find that Mr. Isenberg has failed to place in the record evidence sufficient to raise a genuine issue of fact as to his retention of an ownership interest in 500 Delaware Street after January 1986.[3]

Edward Isenberg has done nothing to show that he has exercised dominion and control over 500 Delaware Avenue, either during the time that title to the property was in Martin's name or after title was transferred into his name in April 1990. On the contrary, it was clearly Martin who exercised complete control over the property before April 1990, and nothing whatsoever changed after that time. Edward has not lived on the premises, or received any income from the property, or taken any part in managing it. Martin, in contrast, has lived in one of the apartments there for many years, has taken full responsibility for leasing the other apartments, collecting rent, making all mortgage, property tax and insurance payments, paying utility bills, maintaining the property and making repairs.

Mr. Isenberg contends that he continues to be obligated to make payments under the mortgage held by Robert and Josephine Kudletz, and that that obligation serves to establish an ownership interest in 500 Delaware Street. He does not, however, explain why his continued contractual obligation to make mortgage payments, after transfer of the property to Martin subject to the mortgage, should be viewed as establishing a continued ownership interest in the property. Neither does he cite any authority in support of his argument.

Finally, Mr. Isenberg maintains that as holder of title to 500 Delaware Street, he is free to dispose of the property, and of the proceeds from the property, as he sees fit, and that this freedom establishes his ownership. To accept this line of argument would be to reject the rule that possession of mere

3. The government maintains that under New York law, a promise to transfer a legal estate in land is governed by the Statute of Frauds, and that to be legally enforceable such an agreement must be in writing. Thus, it contends, any oral agreement that there may have been between Edward and Martin Isenberg giving Edward the right to reclaim title to 500 Delaware Street cannot be enforced. Mr. Isenberg counters by claiming that there is an issue of material fact as to whether he held an "equitable mortgage" on the property during the time that legal title was held by Martin. He argues that under New York law a conveyance, although absolute on its face, may be shown to have been a mortgage if it was given as security for a debt and it was the inten-

tion of the parties that the property be held as security only (citing *Chase National Bank v. Tover*, 245 A.D. 615, 283 N.Y.S. 832 (1st Dept. 1935), *aff'd*, 271 N.Y. 518, 2 N.E.2d 674 (1936); *Zivotosky v. Max*, 190 Misc. 1044, 75 N.Y.S.2d 553 (Sup.Ct.1947), *aff'd*, 276 A.D. 792, 92 N.Y.S.2d 631 (3rd Dept.1949); and *In the Matter of 716 Third Avenue Holding Corp.*, 340 F.2d 42 (2d Cir.1964), *cert. denied*, 381 U.S. 913, 85 S.Ct. 1535, 14 L.Ed.2d 434 (1965)). Since Mr. Isenberg has merely made a bald assertion that he retained a right to reclaim title to 500 Delaware Street—an assertion contradicted by his own testimony at deposition and the documentary evidence—I need not address these issues.

**520**

legal title of property by one who does not actually exercise dominion and control over that property is insufficient to establish standing.

## CONCLUSION

For the reasons given above, I find that Edward Isenberg has failed to establish that he has standing to contest the forfeiture of 500 Delaware Street. The government's motion for summary judgment against Mr. Isenberg is therefore granted.

I do not, however, reach the question of whether the government has established probable cause that 500 Delaware Street is subject to forfeiture. Because I agree with the government that Edward Isenberg is merely a straw owner, and that the transfer of title from Martin to Edward Isenberg in April 1990 failed to effect any transfer of actual ownership, it is evident that Martin Isenberg has retained ownership of the property. Martin, however, has not yet contested the forfeiture. He should now be given an opportunity to do so.

Accordingly, a copy of this order shall be sent to Martin Isenberg at 500 Delaware Street, Tonawanda, New York 14150, as well as to the present parties to this action. If Martin Isenberg wishes to file a claim, he may do so by December 20, 1994. The government may file a response to the claim not later than January 10, 1995. The court will then set a date for a meeting or telephone conference.

So ordered.