**UNITED STATES of America**

v.

**Stephen A. SACCOCCIA, et al.**

**No. 91–115T.**

United States District Court,
D. Rhode Island.

Aug. 24, 1999.

James H. Leavey, Assistant U.S. Attorney, Michael P. Iannotti, Assistant U.S. Attorney, United States Attorney's Office, Providence, RI, for U.S.

Mark E. Overland, Santa Monica, CA, Louis F. Robbio, Robbio & Nottie, Ltd., Cranston, RI, Michael J. Leipzzera, Providence, RI, for defendants.

## MEMORANDUM AND ORDER

TORRES, District Judge.

The government has moved to forfeit eighty-three (83) bars of gold pursuant to a criminal forfeiture judgment against Stephen A. Saccoccia. For reasons hereinafter stated, the government's motion is granted.

### Background

In 1993, Saccoccia was convicted of RICO conspiracy and various money laundering offenses arising out of a scheme to launder money obtained from illegal drug trafficking. *See generally United States v. Saccoccia,* 58 F.3d 754 (1st Cir.1995). The criminal judgment of conviction required Saccoccia to forfeit $136 million representing the proceeds of his criminal activity. Some of Saccoccia's convicted co-conspirators also were ordered to forfeit portions of the proceeds. *See United States v. Saccoccia,* 823 F.Supp. 994 (D.R.I.1993), *aff'd,* 58 F.3d 754 (1st Cir.1995). Since most, if not all, of the money derived from the laundering scheme had been wired to Colombian drug dealers or deposited in foreign banks, an order was entered allowing the government to seek forfeiture of substitute assets belonging to the defendants. *See United States v. Hurley,* 63 F.3d 1, 23–24 (1st Cir.1995); *Saccoccia* 58 F.3d at 783.

The government has filed an affidavit stating that, to date, it has forfeited approximately $3 million in assets belonging to the defendants and that proceedings to forfeit additional assets worth approximately $8 million are pending in several European countries. (Scully Aff. ¶ 3.) The property that is the subject of this forfeiture motion consists of eighty-three (83) bars of gold, valued at approximately $2.1 million, that were buried or otherwise secreted at the home of Saccoccia's mother.

Saccoccia's objections to the forfeiture motion may be summarized as follows:

1. Forty (40) of the gold bars are not forfeitable because Saccoccia claims no ownership interest in them.

2. The Court should "suppress" the forty-three (43) bars in which Saccoccia does assert an ownership interest on the ground that the government learned of them by deposing David Saucier without affording Saccoccia an opportunity to be present thereby violating a previous order of this Court.

3. That the Court should defer ruling on the forfeiture motion until a § 2255 motion filed by Saccoccia has been decided.

4. That the Court should defer ruling on the forfeiture motion until Saccoccia is able to conduct discovery regarding assets already forfeited by the government because the value of any such assets would reduce his forfeiture liability.

### *Discussion*

#### I. *Ownership of the Gold Bars*

 RICO's "substitution of assets" provision allows for the forfeiture of any "property *of the defendant.*" 18 U.S.C. § 1963(m) (emphasis added). Saccoccia argues that, because he does not claim any property interest in forty (40) of the gold bars, these bars are not his property; and, therefore, they are not subject to the forfeiture order against him. However, there is no need to consider that argument because Saccoccia's disclaimer deprives him of standing to contest the forfeiture of these bars. *See United States v. $191,-910.00 in U.S. Currency,* 16 F.3d 1051, 1057 (9th Cir.1994); *see also United States v. 500 Delaware St., Tonawanda, New York,* 868 F.Supp. 513, 518 (W.D.N.Y.1994) ("a claimant must establish that he has a sufficient interest in the property to give him Article III standing to contest the forfeiture"), *aff'd,* 113 F.3d 310 (2d Cir. 1997).

#### II. *"Suppression" of the Gold Bars*

██ On January 19, 1996, this Court entered an order requiring the government to afford Saccoccia an opportunity to be present at any depositions conducted in connection with the forfeiture proceedings. *See United States v. Saccoccia,* 913 F.Supp. 129 (D.R.I.1996). Several days later, the government noticed the deposition of David Saucier, Saccoccia's brother-in-law, and sent a copy of the notice to Saccoccia. Hours before Saucier's deposition was scheduled to begin, Saucier and his counsel met with the United States Attorney and Saucier apparently told the government about the gold bars hidden at Saccoccia's mother's home.

Saccoccia asserts that the government's meeting with Saucier violated the Court's order; and that, as a sanction for the violation, the Court should "suppress" the gold bars (i.e., prevent the government from forfeiting them). Saccoccia argues that since the meeting was precipitated by the notice of deposition, he had a right to be present.

This argument, too, may be disposed of summarily. This Court previously denied Saccoccia's motion to hold the government in contempt of the January 19 order. In so doing, the Court observed that the order merely entitles Saccoccia to be present at "depositions" and does not confer on him the right to be present when a witness voluntarily agrees to be interviewed. (*See* June 6, 1997, Tr. at 9–11.) The fact that Saucier's willingness to meet with the government may have been prompted by the prospect of being deposed does not convert the interview into a deposition. Accordingly, the meeting with Saucier did not violate the January 19 order.

#### III. *Pendency of § 2255 Motion*

 Saccoccia offers no reason why the pendency of his § 2255 motion should preclude forfeiture of the gold bars. Nor is the Court able to divine such a reason.

■ Even the pendency of a direct appeal does not stay execution on a forfeiture judgment. *See Hurley*, 63 F.3d at 23. While entry of a notice of appeal generally "divests the district court of jurisdiction to adjudicate any matters related to the appeal," a "district court retains authority to decide matters not inconsistent with the pendency of the appeal" such as awards of attorneys' fees, acts in aid of execution of a judgment that has not been stayed and substitution of assets orders in criminal forfeiture cases. *Id.* (quoting *United States v. Distasio*, 820 F.2d 20, 23 (1st Cir.1987)).

There is even less reason for staying execution on a forfeiture judgment where, as here, the judgment has become final. Saccoccia's conviction became final when it was affirmed by the Court of Appeals and the Supreme Court denied *certiorari*. The fact that Saccoccia's § 2255 motion collaterally attacks the conviction does not strip the conviction of its finality or prevent the government from executing on the forfeiture order that is part of the judgment of conviction. Otherwise, a convicted defendant could frustrate, indefinitely, any efforts to enforce a judgment against him simply by filing a § 2255 motion.

## IV. *Entitlement to Discovery*

Saccoccia's final argument is more difficult to decipher because it takes different forms in the various memoranda filed by counsel. The gist of the argument appears to be that the forfeiture judgment against Saccoccia must be reduced by any amounts already forfeited by his indicted and unindicted co-conspirators, and that Saccoccia is entitled to conduct discovery for the purpose of determining whether any such forfeitures have occurred.

### A. *Credit for Amounts Forfeited by Others*

■ In determining the extent to which Saccoccia is entitled to credit for amounts that the government may have forfeited from others, a distinction must be drawn between amounts forfeited from *un* indicted co-conspirators (i.e., the Colombian drug lords) and amounts forfeited from those co-conspirators who were indicted and convicted (i.e., his co-defendants).

Judgments of forfeiture were entered only against Saccoccia and his co-defendants. The amount of the judgment against each defendant reflects the "proceeds obtained" by that defendant and how much of the proceeds obtained by other members of the conspiracy were reasonably foreseeable by that defendant. *See Saccoccia*, 823 F.Supp. 994. Thus, the forfeiture judgments against Stephen and Donna Saccoccia were for the entire $136 million in proceeds and the judgments against the remaining defendants were for lesser amounts. The fact that the defendants may have transmitted some of the proceeds or other sums to unindicted co-conspirators had no bearing on the calculation of those judgments.

Each defendant is liable for the full amount of the forfeiture judgment entered against him or her, but "[t]he government can collect its $136 million only once." *Hurley*, 63 F.3d at 23. Accordingly, the amount that Saccoccia is required to forfeit must be reduced by amounts already forfeited by his co-defendants pursuant to the forfeiture judgments entered against them in this case.[1]

On the other hand, Saccoccia is not entitled to credit for any amounts that may have been forfeited by *un* indicted co-conspirators. Since no forfeiture judgments were entered against the unindicted Colombian drug lords, they do not share in Saccoccia's liability under the $136 million forfeiture judgment. Moreover, any amounts that might have been forfeited by

---

**1.** Assets belonging to the convicted co-defendants that may have been forfeited for reasons unrelated to the forfeiture judgments in this case would not reduce Saccoccia's liability because the shared liability encompasses only the $136 million for which these defendants are jointly responsible as a result of the conspiracy for which they were convicted.

those individuals could not have been forfeited pursuant to that judgment. Accordingly, even assuming, *arguendo*, that the government has forfeited amounts belonging to unindicted co-conspirators, those amounts would not reduce Saccoccia's liability for the judgment entered against him in this case; and, therefore, discovery regarding any such forfeitures would serve no purpose.

### B. *Need for Discovery*

 Whether action on the government's forfeiture motion should be deferred in order to afford Saccoccia an opportunity to conduct discovery with respect to amounts that might have been forfeited by co-defendants depends upon the likelihood that discovery would lead to relevant evidence. The burden of establishing such a likelihood rests upon Saccoccia. In this case, no such showing has been made.

On the contrary, there are a number of reasons why it appears highly unlikely that discovery would yield any information that might affect disposition of the government's motion.

In support of its forfeiture motion, the government has filed an affidavit by special agent Michael Scully of the FBI. Scully's affidavit states that he has been involved in the investigation and prosecution of the defendants since its inception. (Scully Aff. ¶ 1.) It further states that the government already has forfeited approximately $3 million worth of assets belonging to the defendants and that the forfeiture of additional assets worth approximately $8 million that were seized in several European countries is pending. (*Id.* ¶ 3.)

 Saccoccia argues that the affidavit should be stricken because it is not based on Scully's personal knowledge. However, that argument fails for two reasons.

First, Saccoccia fails to cite any requirement that evidence presented during the course of proceedings in aid of execution of a judgment must be based upon first-hand knowledge. Although the Federal Rules of Evidence do not address this precise issue, they expressly state that they are inapplicable to a number of analogous "miscellaneous proceedings," including sentencings. *See* Fed.R.Evid. 1101(d)(3).

More importantly, Scully's affidavit indicates that he has been involved in the investigation and prosecution since its inception. Thus, he would be in a good position to know the facts, and the information in the affidavit would appear to be reliable.

Moreover, Saccoccia, himself, almost certainly would be aware of any additional amounts that might have been forfeited. Saccoccia presumably knows what assets belong to him and his wife and where they are located. Thus, it would be a relatively simple matter for him to determine whether any of them are missing.

Although Saccoccia may not be as familiar with the codefendants' assets, they appear to be non-existent. Most of the co-defendants were determined to be indigent and were represented by counsel appointed pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A.

In any event, it is difficult to see how assets belonging to Saccoccia or his convicted co-conspirators could have been forfeited pursuant to the forfeiture judgments entered in this case without Saccoccia's knowledge. In his supplemental memorandum, Saccoccia makes the bald assertion that the government could have seized the defendants' property without this Court's knowledge by registering the forfeiture judgments in other states. However, he fails to explain how that could be accomplished without his knowledge and the knowledge of this Court.

The implausibility of Saccoccia's speculation regarding possible undisclosed forfeitures is underscored by the fact that such forfeitures would have to exceed $122.9 million in order to affect disposition of the motion presently before the Court. As

already noted, the judgment against Saccoccia is in the amount of $136 million and the government acknowledges that it has already forfeited or is seeking to forfeit $11 million worth of assets belonging to Saccoccia, leaving a deficiency of $125 million. Since the gold bars, in question, are valued at only $2.1 million, the undisclosed forfeitures imagined by Saccoccia would have to exceed $122.9 million in order to affect the government's right to forfeit them.

For reasons already stated, it is highly unlikely that forfeitures of that magnitude could have been made, at least without Saccoccia's knowledge. Consequently, there is no sufficient reason to defer ruling on the government's motion while Saccoccia engages in discovery. In this respect, the situation is similar to a request for discovery, pursuant to Fed.R.Civ.P. 56(f), prior to responding to a summary judgment motion. The party making such a request must show that there is "a plausible basis to believe that discoverable materials exist that would likely raise a genuine issue of material fact." *Ortiz Cameron v. Drug Enforcement Admin.*, 959 F.Supp. 92, 94 (D.P.R.1997), *aff'd*, 139 F.3d 4 (1st Cir.1998); *accord Resolution Trust Corp. v. North Bridge Assocs., Inc.*, 22 F.3d 1198, 1203 (1st Cir.1994). Here, Saccoccia has failed to provide any reason for believing that discovery would produce any information relevant to the instant motion.

### Conclusion

For all of the foregoing reasons, the government's motion to forfeit the 83 gold bars is granted.

IT IS SO ORDERED.